APRIL L. HOLLINGSWORTH (Bar No. 9391)
KATIE PANZER (Bar No. 16919)
**HOLLINGSWORTH LAW OFFICE, LLC**
1881 South 900 East
Salt Lake City, Utah 84105
Telephone: 801-415-9909
april@aprilhollingsworthlaw.com
katie@aprilhollingsworthlaw.com
Attorneys for Plaintiff

## IN THE THIRD DISTRICT COURT
## SALT LAKE COUTY, STATE OF UTAH

| | |
|---|---|
| **NICHOLAS BRADBERRY,**<br><br>Plaintiff,<br><br>vs.<br><br>**UNIVERSITY OF UTAH,**<br><br>Defendant. | **COMPLAINT**<br>**(Jury Demand)**<br><br>Case No.<br><br>Judge |

COMES NOW PLAINTIFF NICHOLAS BRADBERRY to complain and allege against

Defendant University of Utah, as follows:

### NATURE OF THE CASE

This is an action against the University of Utah ("the University"), seeking damages and

redress for deprivation of and retaliation in regards to Plaintiff's rights protected by the

Rehabilitation Act, ("Rehab Act") 29 U.S.C. § 794, *et seq,* and for breach of contract and the

breach of the covenant of good faith and fair dealing.

### PARTIES

1. Plaintiff Nicholas Bradberry ("Mr. Bradberry") is an individual residing in Salt Lake

County, Utah.

APRIL L. HOLLINGSWORTH (Bar No. 9391)
**HOLLINGSWORTH LAW OFFICE, LLC**
1881 South 1100 East
Salt Lake City, Utah 84105
Telephone: 801-415-9909
Email: april@aprilhollingsworthlaw.com
Attorney for Plaintiffs

Server _____ C  and _____
Date 1-30-19   Time  1  .30pm
P.O _____

## IN THE THIRD JUDICIAL DISTRICT COURT
## IN AND FOR SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| **NICHOLAS BRADBERRY,** | **SUMMONS**<br>**(21-day Summons)** |
| Plaintiff; | |
| vs. | Case No. 190900455 |
| **UNIVERSITY OF UTAH,** | Judge Randall Skanchy |
| Defendant. | |

To: University of Utah, 201 Presidents Circle, Salt Lake City, Utah 84112

You are summoned and required to answer the attached complaint. Within 21 days after service of this summons, you must file your written answer with the clerk of the court at the following address: Matheson Courthouse, 450 South State Street, P.O. Box 1860, Salt Lake City, UT 84114-1860, and you must mail or deliver a copy to plaintiffs' attorneys at the address listed above. If you fail to do so, judgment by default may be taken against you for the relief demanded in the complaint. The complaint is on file with the clerk of the court.

DATED this 17th day of January, 2019.

HOLLINGSWORTH LAW OFFICE, LLC

/s/ Katie Panzer
Katie Panzer
Attorneys for Plaintiffs

RECEIVED

JAN 2 9 2019

PRESIDENT'S OFFICE

2.  Defendant University of Utah is an institution of higher education formed and existing under Utah Code Ann. § 53B-2-101.

## JURISDICTION AND VENUE

3.  This Court has jurisdiction over the parties and subject matter of this action pursuant to, Utah Code § 78(B)-3-205.

4.  Venue is proper in this Court pursuant to Utah Code § 78(B)-3-307.

5.  Mr. Bradberry filed a Charge of Discrimination with the Equal Employment Opportunity Commission on October 6, 2018, alleging discrimination based on disability and retaliation. *See* Charge of Discrimination, attached as Exhibit 1.

6.  The EEOC issued Mr. Bradberry a Notice of Right to Sue on October 19, 2018. *See* Notice of Right to Sue, attached as Exhibit 2. Mr. Bradberry has satisfied all administrative prerequisites necessary to file this lawsuit.

## FACTUAL ALLEGATIONS

7.  Mr. Bradberry began working for the University's SCI Institute in early March of 2018. He was hired as the software developer for the SCI Institute's IT department. As the IT department's sole software developer, Mr. Bradberry was responsible for handling all of the software requirements of the SCI Institute.

8.  Mr. Bradberry has been diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD"), Major Depressive Disorder, and General Anxiety Disorder.

9.  When Mr. Bradberry was hired, he worked under the supervision of Nick Rathke, the Director of the SCI Institute Computing Facility. Mr. Rathke allowed Mr. Bradberry significant freedom as far as when he worked and when he took breaks. Mr. Rathke did

not require Mr. Bradberry to have a consistent schedule and only asked that Mr. Bradberry notify him if he would not be in the office on a particular day.

10. Due to his ADHD, Mr. Bradberry has difficulty sitting still for long periods of time. The freedom that Mr. Bradberry had under Mr. Rathke allowed him to develop a routine that accommodated his ADHD—Mr. Bradberry would set smaller goals for himself and, when he completed a goal, reward himself by taking a walk for a few minutes.

11. Due to his depression and anxiety disorder, Mr. Bradberry occasionally needed to take a day off or adjust his hours. Mr. Rathke always accommodated this need as long as Mr. Bradberry kept him informed about his schedule.

12. Because Mr. Rathke's supervision style allowed Mr. Bradberry to self-accommodate his disabilities, Mr. Bradberry never had to make formal requests for accommodations.

13. In June of 2018, Mr. Rathke resigned his position as director. He was replaced by Ali Moeinvaziri.

14. When Mr. Moeinvaziri became Mr. Bradberry's supervisor, he stopped by Mr. Bradberry's office to discuss the transition. Mr. Moeinvaziri asked Mr. Bradberry to provide him with a set schedule of his hours. Mr. Bradberry tried to explain that he did not have a set schedule, but Mr. Moeinvaziri responded in a hostile manner.

15. Mr. Moeinvaziri also asked Mr. Bradberry if he belonged to any religion. Mr. Bradberry explained that while he was not religious, he did practice meditation as a way to cope with his ADHD. In response, Mr. Moeinvaziri said something to the effect of, "Oh, I've never managed anyone with ADHD before," and asked Mr. Bradberry if he needed any help.

16. Mr. Bradberry explained that he would do his best to stick to a set schedule but that it would be difficult for him. He explained that having a flexible schedule helped to accommodate his ADHD because it helped with his time management issues.

17. Mr. Moeinvaziri did not respond to Mr. Bradberry's request for a flexible schedule, nor did he engage in the interactive process with Mr. Bradberry to find any other accommodations that would work.

18. As soon as Mr. Moeinvaziri became Mr. Bradberry's supervisor, he was extremely hostile towards Mr. Bradberry, held him to a higher standard than other employees, and subjected him to increased scrutiny.

19. As a new employee, Mr. Bradberry was subject to a six month probationary period. On July 10, 2018, Mr. Moeinvaziri unilaterally extended Mr. Bradberry's probationary period by two months. Mr. Moeinvaziri claimed this was necessary because he had not worked with Mr. Bradberry for long and wanted more time to review his performance.

20. Later that day, Mr. Bradberry overheard Mr. Moeinvaziri talking to Awais Ameen, another employee in the department, and believed the two were talking about him. Mr. Bradberry walked over and asked what they were talking about. Mr. Moeinvaziri reacted with hostility, yelled at Mr. Bradberry, and told him, "I don't like nosy people."

21. After this hostile interaction, Mr. Bradberry went for a walk to clear his head and also spoke with Diane Kruz, HR Manager, about the incident.

22. When Mr. Bradberry returned to his office, Mr. Moeinvaziri verbally disciplined him for leaving his office without permission. Mr. Moeinvaziri also told Mr. Bradberry that his schedule was only 38 hours and he needed to have a full 40 hours scheduled every week.

The requirement of 40 hour weeks was not enforced in the rest of the Institute and was never previously enforced regarding Mr. Bradberry.

23. Over the next several weeks, Mr. Moeinvaziri continued to subject Mr. Bradberry to increased scrutiny. In particular, Mr. Moeinvaziri was carefully policing Mr. Bradberry's time in the office.

24. In late July of 2018, Mr. Bradberry suffered a severe concussion that affected his ability to work. The concussion put Mr. Bradberry into a depressive episode and exacerbated his ADHD symptoms.

25. Even after taking a week off work to recover, Mr. Bradberry had a difficult time concentrating and felt especially disorganized. Mr. Bradberry shared these concerns with Mr. Moeinvaziri. Instead of offering Mr. Bradberry any kind of assistance or accommodation, Mr. Moeinvaziri mocked Mr. Bradberry, saying something to the effect of, "Oh, now it's a concussion *and* ADHD."

26. Due to the issues Mr. Bradberry was experiencing with Mr. Moeinvaziri, he spoke with several people in the HR department, including Magali Coburn and Andrea Brown. Both Ms. Coburn and Ms. Brown told Mr. Bradberry that he should address his concerns with the SCI Institute directors, Dr. Mike Kirby and Dr. Rob MacLeod.

27. Mr. Bradberry contacted Drs. Kirby and MacLeod and set a meeting with them for August 24, 2018. During this meeting, Mr. Bradberry explained that he felt that Mr. Moeinvaziri was hostile towards him and did not treat him the same way he treated Mr. Ameen.

28. Dr. MacLeod asked why Mr. Bradberry felt he was treated differently. Mr. Bradberry explained that he felt that it was because he had ADHD and worked differently than other

people. Mr. Bradberry told Drs. MacLeod and Kirby about the comment Mr. Moeinvaziri

had made about his ADHD after he got the concussion.

29. At the conclusion of the meeting. Drs. MacLeod and Kirby told Mr. Bradberry that they

would speak to HR and set a follow up meeting with him the following Tuesday, August

28.

30. On August 28, 2018, Dr. Kirby told Mr. Bradberry that he had met with HR and Mr.

Moeinvaziri about his claims of disability discrimination. Dr. Kirby then informed Mr.

Bradberry that his employment with the University was being terminated.

31. The letter of separation given to Mr. Bradberry stated that he was terminated from his

probationary employment because the SCI Institute no longer needed a Software

Developer.

32. However, Mr. Bradberry was the only Software Developer at the SCI Institute and he was

in the middle of working on several important projects when he was terminated.

33. On October 11, 2018, less than two months after Mr. Bradberry was terminated, the SCI

Institute posted a job opening for a Software Developer.

34. At the time of his termination, Mr. Bradberry was making $64,000 per year, plus benefits

equal to 11% of his salary. In addition, Mr. Bradberry would have been eligible for and

planned to utilize tuition benefits starting spring semester of 2019.

**FIRST CAUSE OF ACTION**
**(Violations of the Rehab Act—Failure to Accommodate, Disparate Treatment,**
**Discrimination, Retaliation, and Unlawful Termination)**

35. Paragraphs 1 through 37 are incorporated as if fully set forth herein.

36. The Rehab Act provides: "No otherwise qualified individual with a disability shall, solely

by reason of his disability, be excluded from the participation in, be denied the benefits

of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a)(2006).

37. The University of Utah receives federal funds, and the Rehab Act defines "program or activity" to include "the operations of ... a college, university, or other postsecondary institution ..." 29 U.S.C. 794(b)(2)(A).

38. The Rehab Act defines a disability as "a physical or mental impairment that substantially limits one or more major life activities..." 29 U.S.C. 794(a), incorporating 42 U.S.C. § 12102(1)(A).

39. Mr. Bradberry is an individual with a disability as defined under the Rehab Act because his ADHD, depression, and anxiety all substantially limit him in one or more major life activities such as thinking, sleeping, and time management.

40. Mr. Bradberry was otherwise qualified for his position as Software Developer because with reasonable accommodations, he would be able to perform the essential functions of his job.

41. Mr. Moeinvaziri failed to engage Mr. Bradberry in the interactive process when Mr. Bradberry informed him of his disabilities and the issues a strict schedule caused him.

42. Mr. Moeinvaziri made disparaging remarks about Mr. Bradberry having ADHD and displayed animus towards him because he worked differently than other people Mr. Moeinvaziri had managed in the past.

43. Drs. MacLeod and Kirby failed to correct Mr. Moeinvaziri's discriminatory actions when it was brought to their attention.

44. The Rehab Act makes it unlawful for an employer to "discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act..." 29 U.S.C. § 794(d), incorporating 42 U.S.C. § 12203).

45. Drs. MacLeod and Kirby terminated Mr. Bradberry's employment four days after he complained to them of disability discrimination.

46. Mr. Bradberry was told that the SCI Institute no longer needed a Software Developer, despite the fact that Mr. Bradberry was in the middle of several important projects for the Institute.

47. The University of Utah's conduct violated the Rehab Act and, as a result of such violation, Mr. Bradberry is entitled to recover damages in an amount to be established at trial, including lost wages, benefits, and front pay in lieu of reinstatement.

48. The University of Utah's actions were willful and intentional and as such, Mr. Bradberry is entitled to punitive damages in an amount to be determined at trial.

49. Mr. Bradberry is also entitled to recover his reasonable attorney's fees and costs incurred herein.

**SECOND CAUSE OF ACTION**
**(Breach of Contract)**

50. Paragraphs 1 through 49 are incorporated as if fully set forth herein.

51. The University's policies constitute a contract that was binding upon Mr. Bradberry and the University.

52. Mr. Bradberry performed all of his legal obligations under these contracts.

53. University Policy 1-012 provides employees protection from retaliation for engaging in protected activity, including making a complaint of discrimination.

54. Mr. Bradberry made a complaint of disability discrimination to Drs. Kirby and MacLeod when he told them that Mr. Moeinvaziri treated him worse than other employees because he has ADHD.

55. The University breached its anti-retaliation policy in dealing with Mr. Bradberry's complaint about disability discrimination by terminating his employment in response to his complaint.

56. Mr. Bradberry suffered damages arising out of and caused by the University's breach of their contract.

57. As such, the University is liable to Mr. Bradberry for all damages that flow from the University's breach and that are recoverable pursuant to Utah law, including but not limited to lost wages, the value of lost benefits, compensatory damages, injunctive relief, and consequential damages, including attorneys' fees and costs.

### THIRD CAUSE OF ACTION
**(Breach of the Duty of Good Faith and Fair Dealing)**

58. Paragraphs 1 through 57 are incorporated as if full set forth herein.

59. Under Utah law, a duty of good faith and fair dealing exists in all employment relationships.

60. The University breached this duty by allowing, and even facilitating, retaliation against Mr. Bradberry after he made a complaint of disability discrimination to Drs. Kirby and MacLeod.

61. The University's actions and omissions were inconsistent with the agreed common purpose of the parties of supporting the operations of the University, and the justified expectations of Mr. Bradberry that his employer would abide by its own policies.

62. Mr. Bradberry is entitled to all damages flowing from this breach, including his lost wages and future pecuniary losses, as well as his costs and attorneys' fees associated with bringing this action.

### JURY DEMAND

Plaintiff requests that this matter be tried before a jury.

### CLAIM FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment against Defendant as follows:

A. For judgment determining that the University violated the Rehab Act and is liable to Mr. Bradberry for damages equal to his compensatory damages, including lost wages, salary, employment benefits, and front pay in lieu of reinstatement;

B. For reasonable attorneys' fees and costs;

C. For pre- and post-judgment interest on all amounts awarded to Mr. Bradberry, accruing from the date of judgment to the date of satisfaction of judgment awarded; and

D. For such other and further equitable relief as this Court deems appropriate under the circumstances.

E. Mr. Bradberry estimates his damages will exceed $300,000 and therefore this complaint is subject to Tier 3 discovery.

DATED this 16th day of January, 2019.

**HOLLINGSWORTH LAW OFFICE, LLC**

 /s/ Katie Panzer
Katie Panzer
Attorneys for Plaintiffs

# EXHIBIT 1

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 540-2019-00056 |

| Utah Anti-Discrimination & Labor Division | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone | Year of Birth |
|---|---|---|
| Mr. Nicholas A Bradberry | **(801) 913-0001** | 1993 |

| Street Address | City, State and ZIP Code |
|---|---|
| 399 park creeke ln,  Salt Lake City, UT 84115 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| UNIVERSITY OF UTAH | 501+ | (801) 581-7200 |

| Street Address | City, State and ZIP Code |
|---|---|
| 72 Central Campus Dr.,  Salt Lake City,  UT 84112 | |

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 07-01-2018   Latest: 09-28-2018
☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I was hired by the above agency in or around March 2018 as a software developer. In or around July 2018, I informed Ali Moeinvaziri, Director, of my disability. Ali began to regulate my hours and wanted me to submit daily reports. On or about July 10, 2018, I complained to Diana Cruz, Human Resources, of Ali's treatment towards me and that he was harassing me. I've had several meetings with management to no avail. On or about August 28, 2018, I was terminated.

I believe I was discriminated against because of my disability in violation of the Americans with Disabilities Act of 1990, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Digitally signed by Nicholas Bradberry on 10-06-2018 03:02 PM EDT** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 540-2019-00056 |

| Utah Anti-Discrimination & Labor Division | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone | Year of Birth |
|---|---|---|
| Mr. Nicholas A Bradberry | **(801) 913-0001** | 1993 |

| Street Address | City, State and ZIP Code |
|---|---|
| 399 park creeke ln,  Salt Lake City, UT 84115 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| UNIVERSITY OF UTAH | **501+** | **(801) 581-7200** |

| Street Address | City, State and ZIP Code |
|---|---|
| 72 Central Campus Dr.,  Salt Lake City,  UT 84112 | |

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 07-01-2018   Latest: 09-28-2018

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I was hired by the above agency in or around March 2018 as a software developer. In or around July 2018, I informed Ali Moeinvaziri, Director, of my disability. Ali began to regulate my hours and wanted me to submit daily reports. On or about July 10, 2018, I complained to Diana Cruz, Human Resources, of Ali's treatment towards me and that he was harassing me. I've had several meetings with management to no avail. On or about August 28, 2018, I was terminated.

I believe I was discriminated against because of my disability in violation of the Americans with Disabilities Act of 1990, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Digitally signed by Nicholas Bradberry on 10-06-2018 03:02 PM EDT** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Phoenix District Office**

3300 N. Central Avenue, Suite 690
Phoenix, AZ 85012-2504
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
Phoenix Status Line: (602) 640-5000
TTY (602) 640-5072
FAX (602) 640-5071

Nicholas A. Bradberry
399 park creeke ln
Salt Lake City, UT 84115


Subject:    Dismissal of Charge
            Charge Number:540-2019-00056C

Dear Mr. Bradberry:

The purpose of this letter is to inform you that the EEOC has concluded its investigation of the above-referenced charge of employment discrimination. After reviewing the information in the file including the information you submitted, the EEOC does not believe that additional investigation would result in our finding a violation.

The EEOC has terminated its investigation into your allegations. While we fully understand that the parties to a charge often have very firm views that the available evidence supports their respective positions, our final determinations must comport with our interpretation of the available evidence and the laws we enforce. This letter, and the enclosed documents, will dismiss your case and no further action will be taken by the EEOC.

Enclosed is your Dismissal and Notice of Right to Sue. The Dismissal and Notice will explain your right to pursue the matter in court. If you want to pursue your charge, you may do so on your own by filing in Federal District Court within *90-days from the date that delivery of the Notice was* <u>*attempted*</u> *at your last known address of record or 90 days of receipt of the Notice, whichever is earlier. If you do not file a lawsuit within the required 90-day period, your right to file a lawsuit in this matter will expire and cannot be restored by EEOC.*

If you have any questions, please feel free to contact me at (602) 640-5031.

Sincerely,

OCT 1 9 2018
Date

Anick Flores
Supervisor

Enclosure with EEOC
Form 161 (11/16)

### INFORMATION RELATED TO FILING SUIT
### UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *mailed* **to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

***IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.***

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):**   The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

➢ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
➢ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities"  now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
➢ **Only one** major life activity need be substantially limited.
➢ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
➢ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.
➢ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage:**
➢ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
➢ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
➢ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
➢ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note:  Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment.  Beyond the initial pleading stage, some courts will require specific evidence to establish disability.*  For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.